That's right. Good morning. My name is Dave Bremer. I'm representing the Abbott Brothers Farming. Your Honor, after... Well, we've got to fix the clock there. Clock? Yeah. We have clocks. We have clocks. Okay. Oh, I see. Well, you're getting a little extra time. I'll try and reserve a couple minutes for rebuttal, if possible. After 10 years of litigation in state court, through all levels, and a couple years of administrative process, and now litigation in federal court, there's at least one thing that's certain about this case, and that's that the County of Santa Barbara will not provide just compensation for falsely designating the wetland on 95 acres of Addams Brothers' property. And because of this clarity on the lack of just compensation, Addams Brothers is permitted under Williamson County to come now into federal court and seek compensation. Well, counsel, the issue isn't whether they'll provide just compensation. The issue is whether the state of California provides a procedure for your clients to make them provide just compensation, right? I suppose you can look at it that way. I think the fundamental purpose of Williamson County and that state procedure's requirement is to see whether the property owner will be compensated by the state or its political subdivisions. And if the county won't compensate, then there's the state court procedure, and if the state court won't provide some compensation, then you go to federal court. And California does provide a remedy for a taking like this. It's called inverse condemnation, isn't it? I think California potentially provides a number of remedies to the state. Doesn't California provide the remedy of inverse condemnation? Inverse condemnation is available in California as are other counties. But you didn't seek that remedy in the state court, did you? We actually initially filed an inverse condemnation claim, but that was dropped. You dropped that claim. That's correct, Your Honor. And that's one of the requirements under the Williamson case, isn't it? No, it's not one of the requirements. The requirement is state procedures, which is interpreted as state court remedy to provide compensation. And that remedy for this kind of case is inverse condemnation, isn't it? That is one potential avenue, that's correct. But it's not necessarily exclusive. There's nothing in Williamson County that says it's the exclusive remedy. There's nothing in this Court's precedent that says it's the exclusive remedy. What the precedent says is that you have to go through and use some form of adequate procedure to see whether the state will provide compensation. And in this case you sued the you sued for violations of Section 1983, didn't you, violations of substantive and procedural due process. That's correct. Those weren't the right procedures to get just compensation for the taking, were they? No, I would disagree with that, because the remedy, if we had prevailed, as we initially did, on the due process claim, we would have the exact same damages as inverse condemnation. And we would have no Fifth Amendment takings claim right now. It would be remedied. Why did you drop the inverse condemnation claim? I'll tell you why we dropped the inverse condemnation claim, because as we made that claim, the county began arguing that not only was our Fifth Amendment takings claim unright, because we had to first bring an inverse condemnation claim in state court before we could bring the federal claim, but also our inverse condemnation claim was not right, because we had to bring a writ of mandate action before we brought the inverse condemnation claim. And so it was going to take a lot of time and a lot of resources to either comply with that or argue against that. And so we went with the due process claim, although it's a more difficult test and standard to prevail under substantive process, as you know. We went with that and dropped. So it was a strategic decision. It was a strategic choice. And actually, I think it was a proper choice, because I said before, if we had won on our due process, if the trial court judgment on the damages had stood up, we would not be here right now, because we would have been compensated. Now, I don't think you can say that a procedure is sufficient for Williamson County if you win, but not if you lose. And again, in this case, for California, inverse condemnation, the damages that we would have got for this temporary takings claim would have been exactly the same. There's no difference. We would have been compensated. But now we have not been compensated. And there's nothing in Williamson County that says you've got to try this and then this and then this and this and this before you can come to federal court. You've got to make a good faith effort to give the courts a chance to compensate you. And that's what they did. But they said no. And so now we're here a decade later. We've still got this $4 million loss from a patently false and a fraudulent wetland designation. And there's no compensation. Fifth Amendment requires compensation. It doesn't require endless procedures. Well, is your client aware of the wetlands designation before the property was purchased? No, Your Honor. How could they not be? Because it was slipped in in a giant new community plan a few months before they bought the property. They did go out there and look. They didn't see anything. No one informed them of anything. Did they get a title policy? They went and they did. They checked. At that time, there was nothing on record at that point that would have put them on notice. But, you know, frankly, at this point, that's not really the issue right now. I know that, but I want to know why they didn't check it further. That's the first thing that you think about. That's what they did. You're handling a real estate deal. That's correct. What are the encumbrances of record? What's happening to the property? Go look on the property. That's right. And that's what you need to do. And I'm saying they did do that. I'm saying they did do that. They went and they checked, and they also went out there and saw this dry land. Don't you think I was curious when I looked through all this stuff and wondered why these people are buying all this land and paying all that money, and they don't even have any idea that there's a wetlands designation there? Yes, I understand. That's why I asked you the question. Well, I understand why it's a generally relevant question. I wasn't implying that. Can I tell you something? Yes, sir. You need to be a little bit more courteous when you address the bench. Okay. You haven't been. Well, I apologize for that. So think about that. Okay. All right. I apologize for that. No, just generally. All right. You were late this morning, weren't you? No, I was not, Your Honor. Who was late? I was first one here, actually. All right. Now the balance is tipping in your direction. Okay, go ahead. The issues are jurisdictional. We've got the Williamson County problem, and there's also a race judicata issue that's been raised, or a claim preclusion issue that's been raised by the County of Santa Barbara. And on that one, I'd just like to briefly touch on that. The injuries in this case, in this claim, are different than the injuries that were asserted previously in the first state court case. The primary injury in this claim is not the deprivation of due process or deprivation of property. Excuse me. The primary injury in a takings claim is the denial of just compensation for that claim. And that's exactly why Williamson County exists. You can't have a takings claim until there's a denial of just compensation. So claim preclusion, race judicata, would not apply in this case because the claim simply did not exist. That's one reason. And it did not accrue. This temporary takings claim could not have accrued until after the state court's litigation was finished and it was clear that there was a lack of just compensation. You succeeded in state court in getting this declaration of wetlands declared invalid, didn't you? And your clients were able to get an injunction which, against the municipality, was permitted them to farm the land. So what we have here is a claim for a temporary taking. Am I correct about that? Now, I've gone through some of these cases, and I have to say that I'm a little confused about the current state of California law on this subject. I see, of course, a line of cases that follow the Williamson case and say that, well, you've got to exhaust your state court remedy for inverse condemnation before you can come to federal court. You have to have been denied the remedy provided by the state before you can come into a federal court. But then I see that Williamson's been criticized, questioned, and perhaps even modified to something less than a jurisdictional rule and is now being treated by the Ninth Circuit as a so-called prudential rule, which can be waived or could be excused by the court. I have the feeling that that may be the real issue that we have to decide, whether we can excuse or whether the municipality has somehow waived the requirement that you seek the inverse condemnation remedy in state court. And I see that there's a recent Ninth Circuit decision in the case of Guggenheim where the court was debating those very issues. And I see that in Guggenheim the court said, well, this rule is now not jurisdictional, it's prudential, and we're not going to deny this plaintiff a federal forum because of what happened in that case. One of the elements there was the municipality allegedly waived that objection. What I'd like to hear you address is whether there are grounds for waiving or excusing the Williamson rule that the plaintiff must exhaust their state court remedy. Yes, that's a good point. And that's sort of what I was trying to get at when I was emphasizing that there's a lack of just compensation here, is that if Williamson County is prudential in nature, and I think it's pretty clear that it is, at least from the Supreme Court precedent, they say repeatedly that it's prudential, and in San Remo you see Justice Rehnquist bringing that up again. Then in a case like this where you have a real concrete dispute, it's pretty clear there's not going to be compensation from the state or particularly from the county, and you have a clear factual situation, then in some circumstances, at least in this circuit, you can waive the requirement effectively. All right. Now, you just said something that could work, but I want to know why you say it. You say that if we were to determine that it's clear that the state's not going to provide a remedy and we don't have to waste any more time, we can get to work on this case. But why do you say that we can be sure that the state wouldn't provide a remedy if you didn't seek that remedy of inverse condemnation? I guess the way the answer to that is that I wouldn't think, it's not to question whether the state will ever provide a remedy for prudential, because there's always a possibility that maybe you can go on a tort claims act, or there's an endless number of possibilities where you might be able to if you kept going into court. But we know there is one here, inverse condemnation, but for strategic reasons, you didn't ask for it. Right. And we don't know whether that would have remedied it, but it would have been an option. And I guess what I'm saying for prudential purposes, prudential considerations are whether the court should hear the case, not whether it can. And that is pretty much a subjective standard, whether the court believes that the case has gone long enough and it's concrete enough to now, but let's get to the merits. Are your damages provable as to what loss you have sustained by reason of being unable to plow and plant in the disputed area? Yes, they were already proven in the state court trial. And they've been acknowledged by the state and the county? That's correct. That's not really disputed at this point, no. I believe it was over $4 million in lost profits and almost $1 million in lost value and use. And that's what we were awarded initially, and that would have obviously compensated for us for our losses. And we don't have compensation now. And I think the point is on the prudential line is that when you get to – it's somewhat a unique case. When you get to this point, at some point you have to draw the line and say enough. As long as race judicata, there's no problem with that. I don't think there is. Then it's time to let the Federal courts apply the Fifth Amendment. It may be a relatively rare case, but it's going to happen. And it does happen in certain cases. But all those damages would have to be tried over again in a Federal court, wouldn't they? I do not believe so. I believe that there are going to be facts that are going to be collaterally stopped. There are going to be a stop from – because the trial, it's a final judgment on those facts. And the issue preclusion, as you know, applies to law as well as facts. And it would be a relatively simple thing compared to most trials to go back and stop them on that and just litigate the elements of the temporary pittance claim. Even though that judgment was set aside, do you think a stop will still apply? I suppose it would be the underlying – I'm not sure. The trial judge would have to decide. I'm not sure. It's a good point. But the facts that are finally decided, even though they may still stick, the underlying facts. If not, then you're going to have to retry the damages. Then we're going to have to retry it. But it's all there. Everything is there that we need to prove it in the record. It's already been done. And it will all be – well, okay. Yeah, we still have to litigate it. That's your point. But we did litigate it once, and we were denied damages. And there's no indication we're going to have damages, that they're going to pay damages. And this case is as concrete as you can get it in these circumstances. Yes, we did not pursue the inverse condemnation claim. But, again, especially in a prudential environment, there's nothing that requires you to have to do that every time. There are many other places where you don't have to pursue inverse condemnation claims. You could pursue something else. Now, the Sixth Circuit set aside Guggenheim – or the Ninth Circuit, I'm thinking about. The Ninth Circuit set aside its judgment in Guggenheim, and they're considering that on en banc review right now, aren't they? I believe so, yes. Do you think that they might tell – that the en banc court might set some rules that could help you? Well, I don't want to predict, but if I was going to predict – Or they might hurt you. I think the issue in that case is not so much the prudential ripeness. I don't think that's the problem with that case. I think it's the merits – that it was decided on the merits in favor of the property owner. And that was – my guess would be that's why the case was taken. Because the prudential part of that case, Guggenheim was really building on other precedent in the circuit and the Supreme Court. So – but I won't predict. But perhaps it was – Well, in Guggenheim, they had a darn good argument, at least it worked with the court, that the municipality waived it by never, ever asserting the exhaustion remedies argument under Williamson. Right, but the core – I agree with that. But the core foundation for that was the prudential. So what I'm saying is I don't think that core foundation of prudential is really the problem here. Well, that was one of the reasons the court excused it was the waiver. That was the foundation. We don't have that here, do we? You do not have it. They've been arguing that this is what you should have done from the beginning. You do not have a waiver. That's correct. But you do have this prudential. Williamson County is jurisdictional, clearly now after San Remo, because if you can go to state court now after San Remo and file your federal takings claim without first filing – then it's got to be prudential. And I'll – Well, I'm not really satisfied that Ray's judicata is inapplicable here. You certainly got the same party. And in state court, the claim proceeded to a final judgment on the merits. And so why aren't we dealing with the same claim? For several – two reasons, Your Honor. Actually, three. First, the claim in the state court was a due process claim, not a takings claim. We know from this circuit's precedent, Crown Point is one of them, that due process and takings claims can no longer be treated as the same type of claim. That's a 2007 decision that built on the Lingle decision of the U.S. Supreme Court. Secondly, the injuries are different. As I mentioned before, in a due process claim, the injury is not the lack of just compensation. It's purely the deprivation of property. In a takings claim, it's not the deprivation of property that's the problem. It's the lack of just compensation for that deprivation. One way you can look at this also is to consider statute of limitations is not raised here, but if it was, by looking at that, we can see that the injuries are different. Under this court's precedent, our takings claim, it would not have accrued until after the state court action, until after the wetland designation was cut down. Then our temporary takings claim would accrue.  So the injury here did not occur until after the final state court judgment, which struck down the wetland designation and also denied compensation, whereas the due process injury occurred way back when, when the wetland designate would have discovered the wetland designation was false. What is the primary right invaded by the county? Usage. The primary right is the lack of just compensation with the takings claim. The primary right for the due process claim is the deprivation of due process. Why isn't the primary right the right to farm the land free of government regulation? Well, I suppose I would point back to Williamson County, which talks about what a federal takings claim is. It's the just compensation clause that makes a takings claim, and that's your right. It's your self-executing. It should be your self-executing right. It's not that you're losing your property value or use as a due process. It's the problem with the county can just come in, or the government can come in and take your property in at a time, really, and not violate takings clause, as long as it's a public use, and it provides just compensation. Not so for a due process claim. Just compensation is irrelevant. That's legal again, as well as a Crown Point decision. Is this an approach to get around eminent domain? You mean on the part of the county? On the part of your client. I do not believe so. I believe it was on the part of the county. This area was mapped for future county acquisition, and they decided to slap a wetland down there so value would keep down. I believe it would point the other way around. Well, it all depends on how you go about defining what the primary right here is. There's a fair amount of flexibility there. I would say I would agree that the case law is not exactly clear in California, but you at least have to look at the nature of the claims, whether the different causes of action may be a better way to put it, and whether the injuries that are asserted by those causes of action are different. You have two different causes of action, due process takings. We know that those are no longer commingled. Let's say that you're going ahead with the inverse condemnation. You said you didn't pursue it because it looked like it was going to drag on and this was a faster way to move. Isn't that what you said earlier? A quicker way to move, yeah. So had you gone, had you proceeded, completed the inverse condemnation route, what would you have gained that you would not have gained had you gone through the route that you're now taking? Well, for one thing, the county would have the property. What? For one thing, I believe the county would have the property. They would own it. For another thing, 1983 damages are broader than just compensation. They're not, they can be broader is my point. In this case, they're not. But theoretically, you can get emotional distress. There's other things you can get under common law, which is what Section 1983 damages are comprised of that you can't get for just compensation. So the county is no longer interested in the property, is that what you're saying? Well, I do not know. I know that they can no longer impose a false wetland in order to acquire an area for sidewalks, schools, and roads. But I don't know if they're, since they can't get it for free anymore, whether they would be interested in buying it. But there's been no indication of that, as I said. There's no compensation or offer on the table. Okay, thanks. Okay. You're welcome, Ron. Thank you. May it please the Court. My name is Lisa Rothstein. I'm a Deputy County Counsel for the County of Santa Barbara, and I'm representing Defendee Appellant County of Santa Barbara today, along with the individual defendants, Noel Langel, Dan Jarratt, Ellie Hoogervertz, and Catherine Rinlow. What the plaintiffs are trying to do in this case is to shoehorn their time-barred federal substantive due process claim into Williamson County. What does the county want? What does the county want? Does the county want the land? No, Your Honor. I believe there's a little bit of lack of clarity on what exactly the declaratory relief that was granted below in the state court system was. The state court found, and I'm hesitant because this isn't admittedly in the excerpt of record in this case, but what the state court found was that the wetland delineation was improper. The state court did not find that the open space delineation, which is contemporaneous with the wetland delineation, is improper, nor was there any injunctive relief against the county from requiring permit applications on the property due to the other designations other than the open space, et cetera. I don't have a very good grasp of what you're trying to tell me. So, Your Honor, what was your question again? What does the county want? I'll have the court reporter read it back. We don't have a court reporter here. What does the county want? In what sense? The county would like the plaintiff's claims to be adjudicated in the manner that the state and the federal government requires. You limited the use of the property, didn't you? Correct. By ordinance? Correct. And you didn't pay for it? No, Your Honor, we did not. You still haven't? That's correct. You haven't even offered to settle, I guess. Now what do you want to do? Do you want to buy it or do you want to pay the damages? Your Honor, what we argue is that the plaintiffs are required to seek compensation through the proper methods, and once those proper methods are Why can't they just take their bulldozer and start planting their crops right now? Well, for example, there's an open space designation that runs across generally the same area that the wetland designation does. And so they're still currently today required to obtain permits. So the county's blocking them from doing any agricultural production, right? Unless they file a permit, Your Honor, yes. And on the rest of their land, they're free to raise whatever crops they can grow. That's correct. It's a standard government right to require permit applications. In this case, the plaintiffs have never so much as submitted a single permit application to determine what it is they can and what they can do on their property. It's the county's contention that the plaintiffs all the way through have subverted the intentions of Williamson County by failing to appeal the stop work order, failing to ever file a permit to determine what the county would allow and what the county wouldn't allow, which is the whole purpose, of course, of the first prong of Williamson County, that is to get that sort of determination, which has never been made in this case. Has the county taken the actions they have by an affirmative ordinance? The wetland delineation in question was incorporated into the county's ORCA community plan. By ordinance? Yes, Your Honor. So it was a law of the county? Correct. Okay. And that did no damage to the plaintiffs, that law, and the rights they had existing prior to the ordinance? It's difficult to determine at this point. I apologize for talking over you, Your Honor. It's impossible to determine at this point what damage it did or didn't do until the plaintiffs go through. It's your position that it did no damage. It's my position that it's impossible to tell what damage it did because the plaintiffs haven't asked the county to make that determination as they're required to do. You're aware of the fact that the balance of the land has been under growing conditions for a cash product, right? I'm sorry, Your Honor. Could you rephrase the question? The rest of the land has been used to produce income. Well, at the point the case was tried in state court, the plaintiffs had not used it at all. They were not farming any of the property because they didn't want any of the water from the farm property to go on to the alleged wetland, thus to confuse, they thought, the wetland issue. So, no, at this point, my understanding is that they're not farming anything. So what I'd hoped to establish this morning is that this attempt to somehow jam this federal substantive due process cause of action into Williamson County rightness defeats the purposes of Williamson County. For two primary reasons. One, the federal claim that they filed flies in the face of Williamson County, which says that the plaintiffs are required to seek compensation through the procedures the state has provided. Now, since 1987, when the Supreme Court decided First English, there's not a single Ninth Circuit precedent that provides that any compensation in California, other than the inverse condemnation cause of action, is appropriate for satisfying this second prong of Williamson County. I looked and I found no Ninth Circuit precedent or precedent anywhere else in any other circuit that establishes an ability of a federal cause of action to satisfy the second prong of Williamson County, and I would assert that if the plaintiffs had found such a case, they would have cited it. Excuse me. Well, on this... Can you... You know, I'm not acquainted with... I've got some acquaintance with where things are located in Santa Barbara County, at least along the coast. This lands along the coast. Right? It's in the Santa Maria area, Your Honor. Where is it? Santa Maria. Santa Maria. Orkut is a smaller town south of Santa Maria. I don't know if you would describe it as coastal or not, Your Honor. It depends on how far from the coast you consider to be coastal. What's the name of the town south of... It's Orkut. What? Orkut. O-R-C-U-T-T. I know Santa Maria. It's a drive-through there. So... Are there restrictions on the property today? Yes, Your Honor. What are they? Well, the primary example is that there's an open space area that's currently designated on the property. The only thing that the state court required the county to remove is the wetland. Is that the same site as the wetland site? It's a little bit smaller, but very similar, Your Honor. It fits on with the wetland site? Correct, Your Honor. I'm sorry. Am I waiting or am I moving? No, go ahead. Okay. Thank you. Well, counsel, let's get into the issue of whether or not this is a proper case for the court to say, we're going to excuse, or you've waived, the requirements of Williamson County that would otherwise require the plaintiff to seek the remedy of inverse condemnation in state court. A plaintiff says, we've been litigating in state court for 10 years, and we got a judgment. They took it away from us. But the judgment we had was really the equivalent of inverse condemnation. So this court, this panel, this court ought to waive or excuse the Williamson County exhaustion remedies requirement. Do you agree or disagree? If you disagree, why? I completely disagree, Your Honor, and there's several reasons why. One is that the way plaintiffs exhausted their supposed state compensation requirement is by filing time-barred claims. So they filed these federal due process causes of action, and what my learned colleague, Mr. Bremer, failed to say was that they were tossed out of state court because they were barred by the statute of limitations. So how can you satisfy a state compensation requirement by filing the wrong kind of action and filing a cause of action that's barred, it's dead in the water by the time they filed it?  They went to trial. They got a big verdict, judgment, and the state took that away, but that was the equivalent of an inverse condemnation award. But the state took it away because the cause of action was barred by the statute of limitations. The state didn't take it away for some substantive reason that would indicate that California doesn't otherwise provide. They filed it too late. And that ought to be res judicata on the federal claim. Well, I think notwithstanding whether or not it's res judicata on the federal claim, which I think it is, I think it destroys any claim that they satisfied Williamson County by resort to this federal due process. There's five circuits that are ruled conceitedly, the ninth is not one of them, that you can't satisfy Williamson County by filing a time barred claim or by letting the claims run. How can you have a time bar when it's an ongoing impediment to the use of the  Well, it's not currently an ongoing impediment to the use of the land. When did you remove it? Well, the state court found that it was barred by the statute of limitations as the county had argued from the beginning because the plaintiffs had knowledge of the wetland delineation from days after they acquired the property and failed to bring suit for over a year. You're not telling us that they can use it for any purpose they want right now because they're the true owner of the property? No, Your Honor. I would say that if the plaintiffs go to the county today and make an application and there are significant limitations on their property that I would raise to the level of a taking, then they have a case and they should bring it to the state court as Williamson County requires. That's what I think the Williamson County rule requires, not that you artificially fabricate this rightness and say, now we're there and I get my sum total of damages. The point is to bring it to the county, bring it to the state, and see what compensation is available, not bring some time barred inappropriate cause of action. The other thing I want to say about why the prudential considerations don't weigh in their favor, well, there's a lot. The hardship, which is one factor, certainly it's not waived. As Justice Graham pointed out, the county has brought the rightness issues up right from the start. So there's no argument I don't think that the rightness could be waived. The hardship doesn't weigh in favor of the plaintiffs because all the hardship is entirely self-created. They failed to file their claims on time. They made these tactical decisions early on to abandon the obviously proper cause of action. When's the county going to file its condemnation action? Your Honor, I don't believe there's a requirement that the county file it. I'd like to know when. Are they ever going to do it? Is that their testimony now? There's no intention to take it by condemnation? I don't believe there's any intention currently to take it by condemnation. And you're just going to impair the production of farm products indefinitely? Well, there's no indication that they're impaired. The plaintiff hasn't asked for a permit to farm those products. So they can go out and plant on their land tomorrow? They would have to file a permit, Your Honor. Well, they can't go out on their land and plant because of county regulations. But the requirement of a permit under well-established case law is not a taking. It just isn't. The wetlands determination is gone, is that correct? That's correct, Your Honor. So the wetlands determination, which is what gave rise to all this litigation, is gone, isn't it? That's correct. And the issue we have is whether or not they're entitled to be compensated for the loss of their farmland during that period of time when it was in existence. Isn't that what this case is about? That's correct, Your Honor. And whether their case is ripe for adjudication. All right. And if they're not farming it now, that's not before us, is it? That they're currently not farming it? Right. Maybe I ought to ask plaintiff's counsel that question. If I might, I think that Mr. Bremer raised Lingle, and I think that Lingle is another excellent reason why the state court case doesn't decide that the federal substantive due process case in state court doesn't have bearing and doesn't ripen this takings case. A substantive due process under Lingle, it's almost mutually exclusive. In fact, arguably, it is mutually exclusive of a federal takings case. A substantive due process argues the arbitrary and capricious government conduct unrelated to any public good, while a takings claim argues a valid public use that simply takes the property. And so the fact that they were denied compensation under one theory doesn't ripen under another. And as for the other prong of prudential rightness, which is the clarity of the issues, I would argue again, and as I've attempted to do so, I hope effectively, but I'm not convinced, that the whole process of state, of the state process where you bring a writ, where you have to actually make some appeal to the actual board of the county and find out what it is that they will allow and what they won't allow. If the plaintiffs had appealed, as the state court judge said they must, to the county 10 years ago, they could have made all these arguments right then and there, early and timely, to the county that this delineation was improper, that it was inconvenient for them to do so, and they decided against it. Well, that was their tactical decision, and they've chosen a route that doesn't lead to federal takings rightness. Take a moment to peek through while I have 39 more seconds. So your recommendation to the plaintiffs is if they want to farm the land, the total piece of property, that they should ask for a permit from the county. Exactly right, Your Honor, as we've said from the start. Just a permit as to the overlays, as to what used to be a wetland and is still a large part of the overlays. Just a permit as to that. They can farm the other part if they wish. Absolutely, Your Honor. And they weren't farming that because, I thought I heard, they didn't want an accumulation of water on the other part. Right, they didn't want it to appear to be a wetland. Because that might bring out of the soil all these critters. And so there's no worry about that now because it's no longer a wetland. That's correct, Your Honor. It's been determined. And so what they need to do is to ask for a permit to farm it. And the land isn't being used for any purpose now, is it? Your Honor, I don't know what the land is being used for since the end of the state court case. During the state court case, the plaintiffs testified that they weren't farming on the non-wetland area because they didn't want it to look wet, essentially. I'm paraphrasing, obviously. But since then, I don't know what's happening. It could be that today they're farming the non-wetland area. I honestly don't know. Well, it's your case. Yes, Your Honor. You work for the county. You know what's going on. Well, there's no permit requirement for the non-wetland area. What? There's no permit requirement, Your Honor, for the non-wetland area. So unless I had driven up there and cruised around, I wouldn't know that. Perhaps I should have, but I didn't. Well, all you've got to do is get on your computer with Google Maps. That's true. You can go right there. That's true, Your Honor. If I could make just one more point before I sit, and that is that as to the prudential versus jurisdictional nature of Williamson County, while it may be fuzzy as to what the label is, it's not fuzzy at all as to how it's been applied. And there's no Ninth Circuit precedent until Guggenheim, which, as Your Honor indicated, has been ordered and banked, where the court waived these requirements, simply waived them to rule on behalf of the property owner. And I could differentiate McClung, Sweetum, and Cruz, which are the case's plaintiff sites, but I know I'm well over time. So unless there are any other questions. Is there some overriding struggle that's going on here? The county wants to take the land, but they don't want to pay for it. Huh? I could only speculate on that, Your Honor. I mean, there are traditional disagreements of this type in Santa Barbara County that go back over the ages, property rights versus government rights. And I would maintain that the government has a right to require permits and that if the plaintiff wants to challenge them, they need to file those permits and see what level of – it's not – over the last 10 years, they could have filed a lot of permits. Most regulatory takings, plaintiffs file permits and request variances and all that kind of thing. These plaintiffs have filed nothing directly with the county, except one appeal that if you look at the record, you can see why it was fairly erroneously brought. Do you have to pay a fee when you file? A permit fee, I believe you do, Your Honor. Yes. You'll waive the fee for them? No. I didn't know that I could make that promise today, Your Honor. All right. Thank you. Have you ever gone to our court mediation system or mediator, I should say? Has the county ever?  Yes, Your Honor. Has this case ever gone to our mediation service? I can't answer that question. I don't know for a fact that it has. I don't know if Mr. Bremer knows otherwise. Ten years ago. Now the court system requires it in Santa Barbara County, but I don't know that it did ten years ago, so it's possible that this case escaped. Well, I'm talking about the Ninth Circuit. Oh, no, Your Honor. We did not go to mediation. Did you know that we had such a service? Yes, Your Honor. At the time that the offer was made, I think the party's opinions were too all or nothing to make that appear to be a reasonable route. Okay. Thank you very much, Your Honor. Thank you. Anything you want to add? Only if you'd like me to, Your Honor. Well, what's the overriding struggle here? I think Judge Beazer put it well. What? I think Judge Beazer put it well. There was an intent and desire to take this land without paying compensation by using the regulatory process to do that, and it failed. And now there's a desire to go back to a time when you didn't compensate for takings, and that's why we're here. I want to point out this open space designation. The only reason the open space designation is right where the wetland is is because it was a wetland. They were put at the same time. The wetland was made, and then it was made open space because it was a wetland. The permits that she's saying that we should require are all based on the illegal wetland. She's saying you can't come and challenge our illegal wetland until you seek permits based on our illegal wetland. Counsel, what's this case about? Isn't this case about the temporary taking during the wetland's determination? Absolutely. That's all? That's it. Not whether you can farm it today or sometime after that. It's for compensation for the time it was designated wetlands, right? Absolutely. Okay. And I'm saying to the extent that she's saying that we should, counsel is saying that we should. So what the city's done since then is not before us, is it? It does not matter. All right. It's purely a temporary case, based on the illegal wetland designation which did impede our use of the property and the surrounding use of the property because you couldn't cross the wetland area to farm the other areas during that period. And as the record shows, there's a substantial economic problem with that, economic loss. And I'll submit on that.
judges: Graham, Pregerson, Beezer